IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AQUA PHARMACEUTICALS, LLC, *Plaintiff,* v. PARK IRMAT DRUG CORP, *et al.*, *Defendants.* | CIVIL ACTION NO. 17-2273 |

**PAPPERT, J.** May 17, 2018

**MEMORANDUM**

Aqua Pharmaceuticals sued Park Irmat and several individuals asserting claims for breach of contract, fraud, civil conspiracy and unjust enrichment. Defendants move to dismiss Aqua's Amended Complaint, arguing, among other things, that Aqua's claims are barred by the voluntary payment and gist of the action doctrines. (ECF No. 36.) The Court grants the motion in part and denies it part for the reasons that follow.

I[1]

Aqua, a Pennsylvania corporation with its principal place of business in Pennsylvania, manufactures branded prescription drugs. (Am. Compl. ¶¶ 10, 19, ECF No. 21.) On August 7, 2014, it entered into a Pharmacy Services and Dispensing Agreement ("the Agreement") with Park Irmat, a New York corporation with its principal place of business in New York, doing business as Irmat Pharmacy, a licensed retail, specialty and mail order pharmacy. (*Id*. at ¶¶ 11, 20, 30.) Under the terms of the Agreement, Irmat bought pharmaceutical products from Aqua for dispensation to

---

[1] The facts are derived from the Amended Complaint and the Pharmacy Services and Dispensing Agreement between the parties, a document integral to or explicitly relied upon in the Amended Complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

1

customers with valid prescriptions and agreed to provide a number of related pharmacy services. (*Id.* at ¶¶ 2, 31; Mot. to Dismiss Complaint, Exhibit 1 to Declaration of David A. Scupp ("Agreement") at § 2.1 – 2.6, ECF No. 15.) In return, Irmat was permitted to bill Aqua and receive compensation for (1) certain processing fees and (2) "chargeback amounts." (Am. Compl. ¶ 32; Agreement at §4.3.) The Agreement defines chargeback amount as the difference between the price Irmat paid for the drug and the amount of money Irmat received from the customer's third party insurance provider. (Am. Compl. ¶ 34.) For example, if Irmat purchased a drug from Aqua for $150, and received $100 from the customer's insurance provider, Irmat could bill Aqua $50 as the chargeback amount. (*Id.*)

The Agreement contains a choice of law provision which states that it "shall be governed by and construed and enforced in accordance with the laws of the State of Delaware without giving effect to the conflicts of laws principles thereof." (*See* Agreement at § 10.6.) The Agreement also contains a non-waiver provision, whereby "[n]o failure or delay on the part of either Party in exercising any right hereunder will operate as a waiver of, or impair, any such right." (*See id.* at § 10.7.)

Aqua alleges that in late 2015, it noticed discrepancies in Irmat's invoices that eventually led to an audit and investigation. (Am. Compl. ¶ 37.) Aqua contends its audit revealed that on a number of occasions, Irmat billed Aqua and was paid processing fees and chargeback amounts multiple times for a single prescription. (*Id.* at ¶ 58.) Aqua further asserts that Irmat's invoices contained inaccurate information which, on numerous occasions, allowed Irmat to collect chargeback amounts where

2

third party payments equaled or exceeded the price Irmat paid for the drug. (*Id*. at ¶¶ 64, 73.) Aqua claims that it overpaid Irmat by "many millions of dollars." (*Id*. at ¶ 57.)

Aqua contends that prior to the audit and investigation, it was not privy to Irmat's internal billing practices and procedures and did not have access to supporting third party documentation, preventing it from verifying the accuracy of invoices in real time. (*Id*. at ¶ 61.) Aqua further alleges that during the course of its investigation, Irmat sought to conceal its conduct by refusing to provide information and supporting documentation, supplying limited and incomplete documentation, misrepresenting Irmat's operational and financial status, and providing incomplete and evasive answers to Aqua's auditors. (*Id*. at ¶¶ 46, 49, 51, 53, 76, 77, 80.)

On May 17, 2017, Aqua sued Irmat for breach of contract (Count I) and fraud (Count II). (ECF No. 1.) Aqua amended its complaint on August 25, 2017 after Irmat moved to dismiss. (ECF Nos. 15, 21.) In its Amended Complaint, Aqua asserts additional claims for civil conspiracy (Count III) and unjust enrichment (Count IV) and adds as defendants certain Irmat employees. (ECF No. 21.) All defendants move to dismiss the Amended Complaint. (ECF No. 36.)

II

A

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that

[a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

B

The Agreement's choice of law provision provides that Delaware law governs Aqua's breach of contract claim.[2] However, Defendants move to dismiss the breach of contract claim in light of the voluntary payment doctrine relying primarily on Pennsylvania law. They contend that the Court need not resolve whether the Agreement's choice of law provision extends to the application of the voluntary payment doctrine because Delaware and Pennsylvania law is indistinguishable in this regard.

---

[2] Because the Court's jurisdiction over this dispute is based on the parties' diverse citizenship, the choice of law rules of Pennsylvania, as the forum state, apply. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)). "In Pennsylvania, courts will 'generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them.'" *SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 438 (E.D. Pa. 2014) (quoting *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994)).

4

(Mot. at 6 n.5.) Aqua does not dispute this point, other than to note that Delaware case law does not examine the doctrine in depth. (Resp. at 14.) For purposes of the current motion, finding no actual conflict between the states' laws,[3] the Court relies interchangeably on the voluntary payment doctrine under Pennsylvania and Delaware law. *See On Air Entm't Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000) (finding that where parties failed to show and the court could not find any relevant differences between the applicable laws there was no actual conflict and a choice of law analysis should be avoided).

The Court similarly relies on Pennsylvania and Delaware law[4] interchangeably with respect to the fraud and unjust enrichment claims. Relying primarily on Pennsylvania law, Defendants argue that Aqua's fraud claim is barred by the gist of the action doctrine and that the unjust enrichment claim is barred in light of the Agreement. The parties do not address whether the Agreement's choice of law provision extends to Aqua's tort and unjust enrichment claims,[5] though Aqua asserts,

---

[3] "[T]he first step in a choice of law analysis under Pennsylvania law is to determine whether an actual conflict exists between the laws of the competing states. . . . An actual conflict exists if 'there are relevant differences between the laws.'" *McDonald v. Whitewater Challengers*, Inc., 116 A.3d 99, 106 (Pa. Super Ct. 2015). "If there are no relevant differences between the laws of the two states, or the laws would produce the same result . . . the court does not have to engage in a choice of law analysis[] and may refer to the states' laws interchangeably." *Hammersmith*, 480 F.3d at 229.

[4] Although Irmat is a New York company with its principal place of business in New York, neither party contends that New York law should apply.

[5] "'Contractual choice of law provisions . . . do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship.'" *SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 449 (E.D. Pa. 2014) (quoting *Jiffy Lube Intern., Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994)). "Thus, courts must determine 'based on the provision's narrowness or breadth, whether the parties intended to encompass all elements of their association.'" *SKF USA Inc.*, 992 F. Supp. 2d at 449 (quoting *Buddy's Plant Plus Corp. v. CentiMark Corp.*, No. 10–670, 2013 WL 169697, at *5 (E.D. Pa. Jan. 16, 2013)). *Compare SKF USA Inc.*, 992 F. Supp. 2d at 449 (finding agreement that provided that "any disputes arising under this Agreement" extended to tort claims), *with Black Box Corp. v. Markham*, 127 F. App'x 22, 25 (3d Cir. 2005) (finding that where agreement stated that it would be "governed by, and construed and enforced in

5

without any disagreement from Irmat, that Pennsylvania law governs the tort-based claims. (Resp. at 19 n.2.) Again, because the parties do not dispute that Delaware and Pennsylvania law are in accord and the Court has not identified any relevant differences, the Court need not choose between them. *See On Air Entm't Corp.*, 210 F.3d at 149.

III

A

Defendants argue that Aqua's breach of contact claim is barred by the voluntary payment doctrine, which provides that "payment voluntarily made with full knowledge of the facts cannot be recovered, in the absence of a contract to repay." *W. Nat. Gas Co. v. Cities Serv. Gas Co.*, 201 A.2d 164, 169 (Del. 1964) (citation omitted); *see also Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 661–62 (Pa. 2009). The doctrine applies only to payments made without fraud or duress. *Acme Markets, Inc. v. Valley View Shopping Ctr., Inc.*, 493 A.2d 736, 737 (Pa. Super. Ct. 1985) ("Where, under a mistake of law, one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered."); *Nieves v. All Star Title, Inc.*, No. CIVAN10C03191PLA, 2010 WL 2977966, at *8 (Del. Super. Ct. July 27, 2010) ("[T]he voluntary payment rule could not be applied if a plaintiff presented a viable claim of common-law or consumer fraud, such that it could not be said that the plaintiff paid for services with 'full knowledge' of the material facts."). Even if the doctrine applies, which Aqua disputes in light of the parties' non-waiver provision, dismissal is not warranted.

---

accordance, with the law of Pennsylvania" the choice of law clause was narrowly tailored to encompass only the underlying agreement).

Defendants claim that there was "nothing deceitful" about Irmat's conduct because Aqua, all along, had the information it needed to uncover any fraudulent practices. (Mot. at 2; Memo. at 2, 5.) They further argue that Aqua's audit did not rely on "any information other than what Irmat had provided to Aqua in the regular course of business." (Memo. at 5.) Aqua, however, asserts that prior to its investigation into the potential fraud, it "was not privy to Irmat's internal billing practices . . . and had no ability to determine whether or not any given invoice entry" was legitimate. (Am. Compl. ¶ 61.) Aqua further alleges that its auditors found inconsistencies in the originally produced invoices and the later produced supporting documentation, and that the misinformation contained in the invoices concealed Irmat's fraud. (*Id*. at ¶¶ 68, 73.)

Aqua has satisfactorily alleged that it did not have full knowledge of the facts and was subject to fraud,[6] which precludes dismissal of its breach of contract claim under the voluntary payment doctrine. *See W. Nat. Gas*, 201 A.2d at 445–46 (stating that question of whether payment is involuntary is "basically one of fact"); *see also Prod. Source Int'l, LLC v. Foremost Signature Ins. Co.*, 234 F. Supp. 3d 619, 625 (D.N.J. 2017) ("Application of the voluntary payment rule cannot be resolved on a motion to dismiss, where the complaint does not establish whether the plaintiff's payment was truly voluntary and made without mistake of fact.").

B

Defendants next argue that Aqua's fraud claim should be dismissed because it is not alleged with particularity and the claim is barred under the gist of the action

---

[6] Defendants' reliance on the invoices is unavailing. In light of Aqua's allegations, the invoices themselves are not dispositive of Aqua's claims. Further, relevant information has been redacted from the invoices submitted by Irmat, negating any potential clarity they could have provided at this time. (*See* Mot. to Dismiss Complaint, Exhibit 3 to Declaration of David A. Scupp, ECF No. 15.)

7

doctrine. (Memo. at 2.) To state a claim for fraud, the plaintiff must allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Youndt v. First Nat. Bank of Port Allegany*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)); *Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008) ("To state a claim for fraud a plaintiff must allege 1) a false representation, usually one of fact; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.").

Pursuant to Federal Rule of Civil Procedure 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir. 2004)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id*. The particularity requirement is "generally considered satisfied when a defendant has 'fair notice' of the charges against it." *U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 316 (E.D. Pa. 2012).

8

Aqua has sufficiently alleged fraud against Irmat. Aqua's fraud claim has three primary bases: the alleged duplicative billing for a single prescription, the alleged misrepresentation of third party receipts and chargeback amounts due, and Irmat's attempts to conceal its fraudulent conduct during the course of the parties' relationship, including Aqua's investigation and audit. Aqua contends that Irmat knowingly misrepresented facts by submitting invoices with false and inaccurate information. It alleges that these invoices were sent on a bi-monthly basis from August 2014 through May 2016. (Am. Compl. ¶ 35.) The information contained in the invoices was material as it provided the basis for Aqua's alleged overpayments to Irmat. Aqua alleges specific practices employed by Irmat to overstate the invoices, and provides specific examples of erroneous invoice entries. (*Id.* at ¶¶ 60, 62, 64, 70, 71, 72.)

Aqua further contends that when it confronted Irmat about the overbilling, Irmat withheld relevant third party and supporting documentation and provided Aqua with incomplete and evasive answers. (*Id.* at ¶¶ 76, 80.) *See, e.g., U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 318 (E.D. Pa. 2012) (denying motion to dismiss where plaintiff sufficiently alleged fraudulent overbilling through inflated prices over a four year period); *Gibbons v. Kvaerner Phila. Shipyard, Inc.*, No. 05–685, 2006 WL 328362, at *6–7 (E.D. Pa. Feb. 10, 2006) (denying motion to dismiss because plaintiff sufficiently pleaded the "essential factual background" to support her [fraud] claim). Aqua has thus sufficiently "injected precision or some measure of substantiation" into its complaint to notify Irmat of the fraudulent conduct alleged.

C

Neither does the gist of the action doctrine bar Aqua's fraud claim. The doctrine "generally bars fraud claims in cases where a [party's] alleged failure to perform its duty under the contract is transformed into a claim that this failure amounts to fraud." *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 377 (E.D. Pa. 2009). The critical factor in determining whether the claim is truly one in tort or for breach of contract is the nature of the duty alleged to have been breached, as established by the underlying assertions supporting the claim. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). Application of the doctrine bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *J.J. DeLuca Co. v. Toll Naval Assocs.*, 56 A.3d 402, 415 (Pa. Super. Ct. 2012). Duties created by the terms of the contract are those "specific promise[s] to do something that a party would not ordinarily have been obligated to do but for the existence of the contract." *Bruno*, 106 A.3d at 68. Duties that extend to all individuals regardless of the contract are duties based in and regarded as tort. *Id.*

Although "mere non-performance of a contract does not constitute a fraud, it is possible that a breach of contract also gives rise to an actionable tort." *J.J. DeLuca Co.*, 56 A.3d at 415; *Bruno*, 106 A.3d at 69 ("[T]he mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for

breach of contract."). The doctrine is "concerned with the nature of the action as a whole" and, for the fraud claim to survive dismissal, the defendant's alleged fraud must be the essential ground of the lawsuit. *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 15 (Pa. Super. Ct. 2002).

Taking the substance of the allegations asserted in the complaint as true, Aqua's claim rises above an ordinary breach of contract. While the facts asserted, if proven, will establish that Irmat breached the Agreement, the nature of the action as a whole does not arise solely from the Agreement's terms. Irmat's specific promises and duties under the Agreement were to dispense Aqua's pharmaceutical products and to provide related pharmacy services. Aqua's complaint does not take issue with Irmat's performance of these specific contractual duties. Rather, Aqua's complaint relates to Irmat's duty to honestly bill Aqua for the contractual services rendered. Further, Aqua alleges that when confronted about the alleged overbilling, Irmat employed deceptive and evasive tactics to perpetuate its scheme. Thus, the gist of the action doctrine does not bar Aqua's fraud claim at this stage of the proceeding.[7] *See Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 725 (E.D. Pa. 2014) ("Courts have generally held that the gist-of-the-action doctrine does not apply when the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual rights against the defendant." (citing *Greater Phila.*

---

[7] Defendants argue that the civil conspiracy claim should be dismissed because it cannot be sustained as an independent tort. (Memo. at 13.) *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) ("The established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability."). Because the fraud claim survives, the civil conspiracy claim need not be dismissed.

11

*Health Servs. II Corp. v. Complete Care Servs.*, L.P., No. Civ.A.2387, 2000 WL 33711052, at *2 (Pa. Com. Pl. Nov. 20, 2000)).

D

Defendants further move to dismiss the fraud claim as to the individual defendants, which the Court grants without prejudice as to Defendants Falah and Chong. The Amended Complaint fails to allege any factual support for the contention that Falah and Chong "provided evasive and incomplete answers to Aqua and its auditors." (Am. Compl. ¶¶ 84, 87.) The only factual allegations as to those Defendants are that they attended meetings with Aqua's auditors. (*See id.* at ¶¶ 44, 48.) The Court cannot infer on that basis alone that Falah and Chong engaged in fraud.

E

Aqua's unjust enrichment claim is dismissed with prejudice. A plaintiff cannot recover for unjust enrichment when an express contract governs the relationship between the parties. *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987); *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 625 (E.D. Pa. 2010) ("[I]t is a well-established rule that the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon written agreements." (citing *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006)); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) ("A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim."). However, the Federal Rules of Civil Procedure permit plaintiffs to plead in the alternative and courts have permitted unjust enrichment claims to survive when it is unclear whether an express contract governs

12

the parties' relationship.  *See Brown*, 745 F. Supp. 2d at 626; *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 507 (E.D. Pa. 2008); *Tolliver v. Christina Sch. Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008).

There is no dispute in this case that a valid, enforceable contract governed the parties' relationship, and the unjust enrichment claim must be dismissed.  *See Fish Net, Inc. v. ProfitCenter Software, Inc.*, No. 09–5466, 2011 WL 1235204, at *10 (E.D. Pa. Mar. 31, 2011) (dismissing an unjust enrichment claim because "[n]either party claims that the contract was either invalid or unenforceable"); *Armstrong World Indus., Inc. v. Robert Levin Carpet Co.*, No. 98–5884, 1999 WL 387329, at *7 (E.D. Pa. May 20, 1999) (noting that a claim for unjust enrichment could have survived if either party alleged that the contract was unenforceable); *Kuroda*, 971 A.2d at 891 ("[W]hen the complaint alleges an express, enforceable contract that controls the parties' relationship . . . a claim for unjust enrichment will be dismissed.").

Aqua argues the claim should not be dismissed because "it is premature to determine . . . whether the damages suffered by Aqua flow *entirely* from the parties' contract" and the rules permit alternative pleading.  (Resp. at 23 (emphasis in original).)  Again, however, a plaintiff may plead breach of contract and unjust enrichment claims in the alternative "only where there is some dispute as to whether a valid, enforceable written contract exists." *Montanez v. HSBC Mortg. Corp.*, 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012); *see also Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. Ct. 2009).

An appropriate Order follows.

                                        BY THE COURT:

                                        ***/s/ Gerald J. Pappert***
                                        GERALD J. PAPPERT, J.